**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT MCKEAGE and** | ) | |
| **JANET MCKEAGE,** | ) | |
| **on behalf of themselves and** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-03157-CV-S-GAF** |
| | ) | |
| **BASS PRO OUTDOOR** | ) | |
| **WORLD, L.L.C.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Presently before the Court is Plaintiffs' Robert McKeage and Janet McKeage's (collectively "Plaintiffs") Motion for Summary Judgment (Doc. # 193) and Defendants' Bass Pro Outdoor World, L.L.C. ("Bass Pro"); TMBC, LLC ("TMBC"); Tracker Marine Retail, LCC's ("Tracker Marine Retail"); and Travis Boats and Motors Baton Rouge, LLC ("Travis Boats") (collectively "Defendants") Motion for Summary Judgment (Doc. # 309), both pursuant to Federal Rule of Civil Procedure 56.[1] Plaintiffs and Defendants each oppose the others' motion. (Docs. ## 319, 333). For the reasons stated below, Plaintiffs' Motion for Summary Judgment is

---

[1] Also before the Court is Defendants' Motion for Leave to File a Motion to Decertify the Class. (Doc. # 334). Plaintiffs oppose. (Doc. # 339). This Court recognizes a court has a "continuing duty to scrutinize class representation and compliance with Fed. R. Civ. P. 23." *Briggs v. Anderson*, 796 F.2d 1009, 1017 n.2 (8th Cir. 1986). However, this Court has upheld that duty and entertained Defendants repeated requests for decertification. (*See* Docs. ## 167, 174, 265, 290). This Court held a hearing on the certification issue. (Doc. # 157). Each time Defendants raise the same arguments and this Court comes to the same conclusion, that this case meets the requirements of Fed. R. Civ. P. 23 and will continue as a class action. (*See* Docs. ## 167, 174, 265, 290). As explained more fully below, this Court again finds Defendants arguments without merit and therefore Defendants' Motion for Leave to file is DENIED.

Case 6:12-cv-03157-GAF   Document 343   Filed 05/05/15   Page 1 of 29

GRANTED in part and DENIED in part and Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## DISCUSSION

### I.      FACTS

On May 23, 2008, Plaintiffs purchased a boat from the Tracker Boat Center located within Bass Pro.  (Doc. # 194-1 ("Plaintiffs' Contract"), 1).  Plaintiffs purchased their boat directly from TMBC.  (Declaration of Heidi Zinnert ("Zinnert Decl.")).  In addition to the price of the boat, Plaintiffs were charged a $75 "Document Fee" on what was titled an "Order Acknowledgment and Agreement of Sale" form (the "OAAS Form").  (Plaintiffs' Contract, 1). This Document Fee was paid to TMBC.  (Zinnert Decl. ¶¶ 9-10).  Accompanying Plaintiffs' OAAS Form was a "TERMS AND CONDITIONS" sheet (the "Terms and Conditions Sheet"). (Plaintiffs' Contract, 2).  Provision 15 on the Terms and Conditions Sheet provided that "THE PARTIES AGREE THAT THIS AGREEMNT SHALL BE GOVERNED BY THE LAWS OF MISSOURI" ("Missouri Choice-of-Law Provision").  (*Id.*).

### A.      The Forms

Defendants began using the OAAS Form in their stores in mid-2007.  (Doc. # 212-2, 1). It was emphasized that the OAAS Form was created in an "ongoing effort to develop consistent business practices throughout [Defendants'] growing family of dealerships."  (*Id.*).  It was also stated that stores were to "[d]iscontinue the use of all form versions of the [older forms] at [that] time."  (*Id.*).  Prior to October 2013, Defendants identified the OAAS Form as the form to be used in all their sales transactions.  (Affidavit of Robert Fouche ("Fouche Aff.") ¶ 7). Defendants also instructed its stores, through its "Policies and Procedures Manual," that a sales transaction could be made by hand with the OAAS form or by using the Electronic OAAS Form

2

(the "eOAAS Form").  (September 30, 2009 Retail Policies and Procedures Manual ("Manual"), 1; Docs. ## 212-11, 212-12).  Both the OAAS Form and the eOAAS Form were accompanied with the Terms and Condition Sheet, which states that the agreement is governed by Missouri law.  (Exhibit 500[2]; Doc. # 212-12).  In the fall of 2013, Defendants changed their standard sales form; the updated standard form has a terms and conditions sheet that states Delaware law is to apply.  (*See* Declaration of Riley Daniels ¶¶ 3-8; Exhibits 2, 3).

Despite the policy regarding the use of the OAAS and eOAAS Forms, there is evidence that the OAAS Form was not used in all of Defendants' stores: some stores never used the OAAS Form and some stores did not use it during the entirety of the class period.  (Deposition of Wayne Stokes ("Stokes Depo.") 7:8-15; *see* Docs. ## 201-1 to 201-9; January 13, 2013 Declaration of Wayne Stokes ¶ 9; Declaration of Ron Miles ¶¶ 8-10; Declaration of Laura Clancy ¶¶ 9-10; Declaration of Andrew Bower ¶¶ 9-15; Declaration of Christopher Conrad ¶¶ 19-23; Declaration of Jeff Howerton ¶¶ 4-12; Declaration of Karen Marsh ¶¶ 10-13; Declaration of Mike Schum ¶¶ 4-7; Declaration of Amy Anderson ¶¶ 8-9; Declaration of Denise Wagoner ¶¶ 8-10;  Declaration of Gayle Wilfong ¶¶ 21-23; Declaration of Kristi Nance-Taylor ¶¶ 17-18; Declaration of Collin Hughes ¶¶ 17-22; Declaration of Linda Kraatz ("Kraatz Decl.") ¶ 16).  As a result, this Court previously ordered that Plaintiffs were required to manually sift through each customer's file to determine whether the OAAS Form or the eOAAS Form was used in the transaction to discern whether a customer could be a member of the class.  (Doc. # 265, p. 27).

B.      **The Document Fee**

Defendants began charging customers a document fee around 1998.  (Stokes Depo. 64:20-24).  The amount charged to the customer as a document fee varied with the size of the

---

[2] The exhibits numbers assigned to exhibits by the parties are retained.

purchase.  (Deposition of Laura Clancy 29:3-8).  The average document fee was $69.99 per customer.  (Declaration of Michael Buchanan ("Buchanan Decl.") ¶ 8).  The document fee was a fee charged for completing certain documents such as the bill of sale, the OAAS Form, a power of attorney, and title, license, and registration documents.  (Deposition of Denise Wagner ("Wagner Depo.") 22:6-23:4; Kraatz Decl. ¶¶ 8, 13; Exhibits 529-34; Deposition of Tim Eisenhower ("Eisenhower Depo.") 47:2-9).  Often, completing the documents required only filling in blanks on pre-printed forms.  (Zinnert Decl. ¶¶ 11, 19).  The document fee was also used for other services such as to obtain loan pay-off information, explain the registration and titling process, and register warranties.  (Kraatz Decl. ¶ 8).  Defendants stopped charging document fees in mid-2009.  (Stokes Depo. 20:22-21:10).

## C.    Corporate Structure

The four Defendants in this case are separately organized limited liability companies. (Declaration of Tim Eisenhower ("Eisenhower Decl.") ¶¶ 7-10).  Bass Pro Group, LLC is a parent company that owns one hundred percent of both Bass Pro, LLC and Tracker Marine Retail.  (Eisenhower Depo. 4:21-5:5).  Bass Pro, LLC owns one hundred percent of Bass Pro. (Eisenhower Decl. ¶ 10).  Tracker Marine Retail is a holding company that owns one hundred percent of TMBC who owns one hundred percent of Travis Boats.  (*Id*. ¶¶ 7-9).

Bass Pro is a retail seller of fishing and hunting equipment, outdoor clothing, camping and hiking supplies, firearms, and outdoor goods.  (*Id*. ¶ 10).  TMBC is a retail seller of boats, trailers, motors, and ATVs.  (*Id*. ¶ 7).  As of 2008, there were seventy-three TMBC dealerships, twenty-one were freestanding and fifty-two were located inside Bass Pro stores.  (*Id*. ¶¶ 15-16). The TMBC dealerships located within Bass Pro stores paid rent to Bass Pro pursuant to a lease

4

or sublease agreement. (*Id.* ¶ 16). Travis Boats is a single dealership located in Louisiana which sells boats, trailers, motors, and ATVs. (*Id.* ¶ 8).

Bass Pro, LLC and Tracker Marine Retail have separate financial statements, business licenses, and general ledgers. (*Id.* ¶ 12). TMBC and Bass Pro each have their own employees and assets. (*Id.*). However, Bass Pro and TMBC issue joint program guidelines and have some joint training programs. (Bass Pro/TMBC Professional Accessory Installation Program Guidelines; Bass Pro/TMBC Base Camp Training Meeting Power Point Presentation). TMBC has the authority to cash checks made out to Bass Pro. (Stokes Depo. 215:10-13). After a customer purchases a boat from TMBC, TMBC sends the customer a letter thanking the customer for their purchase "here at Bass Pro Shops" and TMBC sales associates have business cards with Bass Pro logos. (*See, e.g.* TMBC March 13, 2007 Letter to Matthew Baumgartner; Business Card of Winston Shepherd). TMBC managers sit in on Bass Pro's annual manager meetings. (Deposition of Riley Daniels 61:14-22)

## D.    Procedural History

On January 21, 2009, Plaintiffs filed suit in the Circuit Court for St. Charles County, Missouri alleging, among other things, that Defendants violated Missouri law by engaging in the unauthorized practice of law when Defendants charged document fees for the preparation of legal documents. (Petition, Count I).[3] Venue was, thereafter, transferred to Greene County. (*See* April 6, 2009 Order). Plaintiffs requested the state court certify a nationwide class. (*See* January 24, 2011 Order Granting Certification of Class Action; Preliminary Writ of Prohibition).

---

[3] Plaintiffs' Petition; the April 6, 2009, Order; the April 15, 2009, Order; Plaintiffs' Second Amended Petition; Plaintiffs' Third Amended Petition; January 24, 2011, Order Granting Certification of Class Action; Preliminary Writ of Prohibition; and February 28, 2012, Order can all be found in Document Number 1-4, which also contains many other state court filings.

5

The state court certified a class that was limited to individuals who entered into contracts within Missouri.  (January 24, 2011 Order Granting Certification of Class Action).

On appeal, the Missouri Supreme Court concluded that the state court abused its discretion in limiting the certification.  *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 601 (Mo. 2012) (en banc).  The Missouri Supreme Court stated that Defendants drafted the OAAS Forms with its Missouri Choice-of-Law Provision and forum-selection clause with the vision that all litigation arising from the OAAS Forms be "resolved in Missouri, by Missouri courts, applying Missouri law."  *Id*. at 600.  The court would not permit Defendants to "disavow the [OAAS Forms] it drafted in order to limit the class of plaintiffs" to only those in Missouri when Defendants intended the OAAS Forms to apply to all transactions and all litigation.  *Id*. The court also stated that Defendants "conditioned every sale to each putative class member upon acceptance of the Missouri [C]hoice[-]of[-L]aw [P]rovision," that Plaintiffs' "claims against [Defendants] arise out of the same [OAAS Forms]," and that "all of the [OAAS Forms] required the application of Missouri law to any claim."  *Id*. at 600-01.  Thus, the court reasoned the class claims are necessarily nationwide and need not be limited to transactions in Missouri. *See id*. at 601.  Pursuant to the Missouri Supreme Court's decision, the state court certified a nationwide class of persons.  (February 28, 2012 Order).

On March 21, 2012, Plaintiffs' action was removed to this Court.  (Notice of Removal). Defendants moved to decertify the class action on January 15, 2013.  (Doc. # 108).  After a hearing and extended briefing, this Court denied Defendants' Motion to Decertify.  (Doc. # 167). This Court concluded certification was proper under Federal Rule of Civil Procedure 23(a) and (b)(3).  (*Id*.).  Defendants petitioned the Eighth Circuit for review of this Court's denial of their Motion to Decertify.  (Exhibit 540).  The Eighth Circuit denied Defendants' petition.  (Exhibits

544, 545).  After several clarifications and amendments to the class definition (*see* Docs. ## 167,

174, 259), the class is presently defined as follows:

> All persons charged a document fee by [Defendants] for the five (5) years
> preceding [Plaintiffs'] filing suit to present, on the sale, lease, and/or financing of
> boats, boat trailers, boating accessories, and/or recreational vehicles, which fees
> stem from in-store purchases in Missouri or from contracts containing Missouri
> choice of law provisions, and who either:  (A) was subject to any of the following
> terms and conditions or terms and conditions substantially similar to the legal
> nature thereof:  (1) a disclaimer of warranties providing that in all cases, Seller
> shall not be liable for any consequential damages arising from the breach of this
> agreement, any express or implied warranty or otherwise, to the maximum extent
> permitted by applicable law; (2) a liquidated damages provision which references
> the Uniform Commercial Code; (3) a provision either limiting liability for
> personal injuries or death arising out of the use or operation of the relevant
> equipment to the buyer or manufacturer, not Defendants, or indicating that the
> buyer would have to indemnify Defendants for any claim or action brought
> against Defendants; (4) a waiver of the right to trial by jury; (5) a provision
> stating that except as specifically set forth in this Agreement, Seller disclaims any
> representations or statement by any agents, employees or representatives, whether
> verbal or in writing, and that Buyer has not relied upon any such representations
> or statements; (6) a provision stating that in the event it is necessary for Seller to
> employ an attorney to enforce any of the terms of this Agreement or to defend any
> lawsuit arising out of this Agreement, then Buyer shall pay all of Seller's costs,
> including reasonable attorney fees, whether incurred in trial, appellate or
> bankruptcy court proceedings, plus court costs, deposition, investigation and
> travel expense and any other necessary expenses unless a judgment is entered
> against Seller for the complete relief sought in any complaint or pleading; (7) a
> provision indicating Missouri law governs the agreement; or (8) a provision
> indicating that the venue for any action or claim is Greene County, Missouri; or
> (B) during the relevant sale, lease and/or financing transaction had Defendants fill
> out an application for title, in a state which requires a boat to be titled, or a power
> of attorney which is governed by Missouri law.

(Doc. # 259, p. 4) (alterations in original).

Pursuant to the Court's previous Order, Plaintiffs hired seventy-seven reviewers to

manually inspect each customer's file and determine whether the individual met the class

definition by discerning whether the file contained the OAAS Form, the eOAAS Form, or the

Terms and Conditions Sheet.  (Doc. # 270).  As a result of their manual review, Plaintiffs

identified 103,357 potential class members.  (*Id.*).  On November 6, 2014, after removing some

individuals from the potential class member list, Plaintiffs sent notice to 92,097 class members. (Doc. # 301 ¶ 1). On January 5, 2015, the Court allowed Plaintiffs to send notice to another 2225 class members over Defendants' objection. (Doc. # 303). The class members were broken down into three categories: (1) individuals whose customer files were reviewed and reflected that the customer met the class definition;[4] (2) individuals whose files were reviewed and reflected that the customer met the class definition even though the individual was not shown to meet the class definition under the IDS system;[5][6] and (3) individuals who were listed as meeting the class definition on the IDS system but whose files were not provided for inspection.[7] (Doc. # 270, ¶¶ 2-6).

## II.     LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*,

---

[4] This group will be referred to as "Category One" individuals.
[5] The IDS system is a computer system that TMBC uses to record information about inventory and sales transactions. (Declaration of Wayne Stokes ("Stokes Decl.") ¶ 3).
[6] This group will be referred to as "Category Two" individuals.
[7] This group will be referred to as "Category Three" individuals.

8

904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

### A.    Whether Plaintiffs' Motion for Summary Judgment is Outdated

Defendants first allege that Plaintiffs' Motion for Summary Judgment should be denied outright because it is "outdated." (Doc. # 333, p. 89). Plaintiffs' Motion for Summary Judgment was filed on September 16, 2013. (Doc. # 194). The original dispositive motion deadline was September 15, 2013. (Doc. # 38). At that point, this case had been in progress for a year and a half and the discovery deadline had passed. (*Id.*). The Court decided to stay disposition of Plaintiffs' Motion for Summary Judgment, per Defendants' request, because it believed it was the "best practice to afford class members notice and an opportunity to opt out prior to determining the merits of Plaintiff's Motion for Summary Judgment." (Doc. # 265, p. 28). The Court then extended the deadline for dispositive motions, again per Defendants' request, allowing Defendants to file their present Motion for Summary Judgment and giving Plaintiffs the opportunity to file a renewed Motion for Summary Judgment if they so desired. (Doc. # 292, pp. 3-4). After twice postponing disposition of Plaintiffs' Motion for Summary Judgment at the request of Defendants, this Court declines to punish Plaintiffs for Defendants' requests by now declaring that Plaintiffs' Motion is outdated.

Defendants also allege that Plaintiffs' Motion is problematic because, since the Motion was filed, the Court has dismissed one of Plaintiffs' claims, amended the class definition and the members of the class, and excluded testimony from one of Plaintiffs' experts. (Doc. # 333, p. 89). However, the Court gave Defendants the opportunity to file updated briefing on Plaintiffs' Motion for just this reason. (Doc. # 324). Additionally, the excluded expert's testimony was

9

only cited in one place in Plaintiffs' Suggestions in Support of their Motion for Summary Judgment. (*See* Doc. # 194, p. 25). The contention the expert's testimony was used to support is also supported by three separate cases. (*See id.*). Further, this Court does not believe that amending the members of the class changes the legal analysis upon which the class members' claims are based. Finally, Plaintiffs' Motion for Summary Judgment contained one page discussing their now dismissed claim and Plaintiffs readily admit in their Reply Brief that argument is now moot.[8] (Doc. # 338, p. 22 n.14). Accordingly, the Court sees no issue in addressing the merits of Plaintiffs' Motion for Summary Judgment.

**B.     Whether This Case May Continue Against Non-TMBC Defendants**

Plaintiffs assert their claims against four defendants: Bass Pro, TMBC, Tracker Marine Retail, and Travis Boats. (Doc. # 71). However, Plaintiffs directly purchased their boat from TMBC. (Zinnert Decl.). Defendants argue that summary judgment should be granted to Bass Pro, Tracker Marine Retail, and Travis Boats because they were not parties to the contract. (Doc. # 310, p. 21). Plaintiffs allege that Bass Pro, Tracker Marine Retail, and Travis Boats may be held liable under an agency theory. (Doc. # 319, p. 64).

As an initial matter, Plaintiffs have put forth no facts to suggest that Travis Boats meets any of the elements necessary to establish an agency relationship. (*See id.*). Neither have Plaintiffs alleged any other theory of liability against Travis Boats. (*See id.*). In fact, in the section of their brief devoted to arguments regarding agency, Plaintiffs fail to even mention Travis Boats. (*See id.* at 65). Instead, they only argue that "TMBC is acting as the authorized or apparent agent of [Bass Pro] (and Tracker Marine Retail)." (*Id.*). This Court also sees no facts in the record upon which a reasonable jury could conclude that TMBC was an agent of Travis

---

[8] As such, Plaintiffs' Motion for Summary Judgment on this claim is DENIED as moot.

Boats. Thus, Defendants' Motion for Summary Judgment is GRANTED in favor of Travis Boats.

"Whether an agency relationship exists is generally a factual question for the jury." *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 11 (Mo. Ct. App. 2010). "However, this relationship is a question of law for the court to determine when the material facts are not in dispute, and 'only one reasonable conclusion can be drawn from the material facts.'" *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 384 (Mo. Ct. App. 1999) (quoting *Johnson v. Bi-State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. 1990) (en banc). There are three elements needed to create an actual agency relationship: "(1) the agent holds the power to alter legal relations between the principal and third parties; (2) the agent is a fiduciary with respect to matters within the scope of agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *West*, 327 S.W.3d at 12.

Plaintiffs argue that there is a factual dispute on the issue of whether Bass Pro or Tracker Marine Retail had the right to control TMBC that precludes summary judgment. (Doc. # 319, pp. 64-65). However, although the right to control is one element needed to create an actual agency relationship, "[t]he absence of any one of [the] three [elements] defeats the purported agency relationship." *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. 2002) (en banc). Thus, even if Plaintiffs are correct that there is a factual dispute on the issue of control, if there is no dispute of material fact regarding either of the other two elements, summary judgment may be granted on the issue of actual agency. For Plaintiffs to establish the first element, they must have established that the alleged agent, TMBC, had the ability to alter legal relationships between the alleged principal, Bass Pro or Tracker Marine Retail, and third parties. *See State ex rel. Domino's Pizza, Inc. v. Dowd*, 941 S.W.2d 663, 665 (Mo. Ct. App. 1997). While Plaintiffs

have put forth some evidence regarding the alleged principals' abilities to control the alleged agent, no evidence or arguments have been made that TMBC in any way had the power to alter the legal relationships between Bass Pro or Tracker Marine Retail and their customers. (*See* Doc. # 319). Thus, as a matter of law, Plaintiffs have failed to establish the existence of actual agency between TMBC and Bass Pro or Tracker Marine Retail.

Plaintiffs also attempt to establish the existence of apparent agency. (*Id.* at 66). To establish apparent agency, Plaintiffs must show that:

> (1) the principal manifested consent to the exercise of authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually did believe, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal.

*Gray v. Builders Square, Inc.*, 943 S.W.2d 858, 861 (Mo. Ct. App. 1997). There is some debate regarding whether an apparent agency theory may be used in a class action context because "'[a]pparent authority exists only with regard to those who believe and have reason to believe that there is authority'" which could undermine Fed. R. Civ. P. 23(b)(3). *See Bost v. Clark*, 116 S.W.3d 667, 677 (Mo. Ct. App. 2003) (quoting *United Mo. Bank v. Beard*, 877 S.W.2d 237, 240 (Mo. Ct. App. 1994)). However, even assuming such a theory is available, Plaintiffs have not established its existence in this case.

Plaintiffs fail to make any argument regarding the last element of apparent agency, that Plaintiffs would suffer injury or loss if Bass Pro or Tracker Marine Retail were not part of the action. (*See* Doc. # 319). Apparent agency does not exist if a plaintiff does not change her position in detrimental reliance on the alleged apparent authority. *See Hefner v. Dausmann*, 996 S.W.2d 660, 667 (Mo. Ct. App. 1999) (finding that the plaintiffs failed to establish apparent

agency because they did not show that they changed their position in reliance on the alleged authority). There is no evidence that TMBC is undercapitalized or would be unable to pay any damages in this case. (*See* Doc. # 319). Thus, apparent agency does not exist as a matter of law.

Plaintiffs final argument to support liability against Bass Pro or Tracker Marine Retail is that this Court should pierce the corporate veil. (*See id.* at 64-67). In order to pierce the corporate veil, a plaintiff must show:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Collet v. Am. Nat. Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986). A plaintiff has established its burden under the third element in situations such as when "the action of the dominant corporat[ion] renders the subservient corporation insolvent." *Id.* at 287. Similar to its apparent agency argument, this argument fails because Plaintiffs have failed to establish the existence of the third element. Thus, this Court may not pierce the corporate veil. Accordingly, Defendants' Motion for Summary Judgment is GRANTED in favor of Bass Pro and Tracker Marine Retail.

**C.      Whether TMBC Engaged in Unauthorized Practice of Law**

> *1.      Whether there are Genuine Disputes of Material Fact Preventing Summary Judgment*

Summary judgment is improper if there is a genuine dispute of material fact. *Price*, 664 F.3d at 1191. This Court has previously determined that in order to have a viable claim for unauthorized practice of law under the Missouri statute, a plaintiff's transaction must have been governed by Missouri law either because the transaction took place in Missouri or because the customer agreed to a Missouri choice-of-law provision. (Doc. # 265, pp. 21-22). TMBC argues that summary judgment is not appropriate in this case because there are genuine issues of material fact regarding whether all of the class members' transactions were governed by Missouri law. (Doc. # 333, p. 90). However, while

> [t]he movant has the burden of showing that there is no genuine issue of fact, [the non-moving party] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson*, 477 U.S. at 256. That is, a "[non-moving party] c[an] not defeat [a] properly supported summary judgment motion . . . without offering 'any significant probative evidence.'" *Id.* (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

TMBC first argues that there are 8000 individuals improperly contained within Category One who did not agree to be bound by Missouri law. (Doc. # 333, p. 91). As support for that contention, TMBC reviewed 591 of the Category One class members' files. (Buchanan Decl. ¶ 5). Of those 591 files, TMBC determined that sixty-eight were not governed by Missouri law. (*Id.* ¶ 6). Sixty-Eight out of 591 represents an error rate of eleven and a half percent, which TMBC used to extrapolate that 8000 individuals were misidentified. (Doc. # 333, pp. 4-5). However, TMBC has only presented concrete evidence that sixty-eight were misidentified. (*Id.*). Thus, for 7932 individuals, TMBC has failed to offer any specific facts or significant probative evidence to create a genuine issue for trial. Thus, there is no genuine issue of material fact which

14

would prevent summary judgment as to those individuals. As to the sixty-eight individuals, Defendant has raised a genuine issue of material fact regarding whether their transactions were governed by Missouri law. Thus, summary judgment for those sixty-eight specified individuals is DENIED.

TMBC next argues that summary judgment cannot proceed for the individuals in Category Three because Plaintiffs never reviewed their files and thus, cannot establish that their transactions were governed by Missouri law. (Doc. # 333, p. 92). Although Plaintiffs did not review the Category Three individuals' files, Plaintiffs have properly supported that those individuals are bound by Missouri law. While this Court has previously opined that "one cannot assume all customer files are subject to Missouri law," these specific individuals were identified as class members in the IDS data provided by Defendants. (Doc. # 265, p. 22; Doc. # 270, p. 4; IDS Database). Plaintiffs also provided evidence that the OAAS and eOAAS Forms were standard forms designed to be used in all transactions. (*See* Fouche Aff. ¶ 7; Manual, 1; Docs. ## 212-11, 212-12). On the other hand, TMBC has failed to offer any specific facts or significant proof that a genuine factual issue exists. Instead, TMBC offers mere allegations that these individuals may not actually meet the class definition. Accordingly, there is no genuine issue of material fact which would prevent summary judgment as to those individuals.

TMBC next argues that there are genuine disputes of material fact regarding whether individuals whose files contain the OAAS Form or the eOAAS Form but not a signed terms and conditions sheet, agreed to be bound by Missouri law. (Doc. # 333, p. 6). However, this Court has already determined that if an individual's file contained the OAAS Form or the eOAAS Form, even if the form was not accompanied by a signed Terms and Conditions sheet, that individual is bound by Missouri law. (*See* Doc. # 265, pp. 24-26). The Court finds its previous

15

rationale sound. Accordingly, there is no genuine issue of material fact which would prevent summary judgment as to those individuals.

TMBC additionally argues that there is a genuine dispute of material fact regarding whether out-of-state purchasers agreed to be bound by Missouri law. (Doc. # 333, p. 99). As this Court has previously determined, out-of-state purchasers who made telephone or internet orders from Missouri stores are not included in the class unless they made purchases pursuant to the OAAS or eOAAS Form. (Doc. # 259, p. 3). Defendants identified 323 out-of-state class members who made purchases before the OAAS or eOAAS Forms were in use. (Doc. # 333, p. 100). Thus, these individuals cannot be part of the class unless they made their purchases within a Missouri store. Plaintiffs thereafter provided evidence that these individuals met the class definition. (*See* Exs. 511; 512). In response, TMBC only offers mere speculation that because some sales were made remotely, some of these individuals may have made remote sales too. (Doc. # 333, p. 100). This is insufficient to prevent summary judgment.

Finally TMBC argues that of the 94,322 individuals who were sent class notice, there is a genuine dispute of material fact as to whether 2225 of them ever paid a document fee. (Doc. # 333, p. 101). Defendants previously raised this argument in an attempt to prevent Plaintiffs from sending notice to these individuals. (*See* Doc. # 295, p. 2). At that time, Defendants alleged that the 2225 individuals had not paid document fees but instead had their fees fully refunded or paid only registration fees. (*Id.*). This Court considered and rejected Defendants' argument on that basis, determining that individuals were still class members even if they paid only a registration fee or had their document fee refunded. (*See* Doc. # 303). Now TMBC alleges that this Court misunderstood its position and that actually these individuals never paid any fee whatsoever. (Doc. # 333, p. 101). This Court finds it highly suspicious that TMBC relies on the same

16

evidence as it did previously but now alleges that no fee at all was paid. However, "[c]redibility determinations . . . are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. TMBC cites to specific, individualized facts supporting its contention that no fee was paid by the disputed individuals. (Stokes Decl. ¶ 14). Thus, Plaintiffs' Motion for Summary Judgment is DENIED regarding the 2225 individuals allegedly identified in the IDS database as not having paid any type of fee.

### 2. *Whether TMBC Engaged in Unauthorized Practice of Law as a Matter of Law*

Missouri law prevents an unlicensed individual or business from engaging in the practice of law or law business. Mo. Rev. Stat. § 484.020(1). Law business is defined as

> the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

Mo. Rev. Stat. § 484.010(2). "[C]harging a separate fee for the completion of legal forms by non-lawyers constitutes the unauthorized practice of law business." *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 702 (Mo. 2008) (en banc). At the certification stage, the Court found that TMBC's actions constituted unauthorized practice of law. (Doc. # 167, p. 9). This Court recognizes that decisions at the certification stage often come before the close of discovery and "may therefore require revisiting upon completion of full discovery." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). However, the Court's determination came only a few weeks before discovery closed and was reaffirmed just two weeks before the close of discovery. (*See* Docs. ## 38, 167, 174). This Court does not believe that there have been any factual discoveries since that point that would necessitate revisiting that determination.

Case 6:12-cv-03157-GAF   Document 343   Filed 05/05/15   Page 17 of 29

Regardless, TMBC's only argument on this issue is that it did not engage in unauthorized practice of law because it did not exercise legal judgment when it filled out forms necessary to secure title or power of attorney. (Doc. # 310, p. 31; Doc. # 333, p. 104). However, TMBC misunderstands the law. Whether preparing a document requires legal judgment or discretion is the standard to determine whether a document is legal in nature. *Hargis v. JLB Corp.*, 357 S.W.3d 574, 584 (Mo. 2011) (en banc) ("Determining whether a document is legal in nature requires this Court to 'balance the protection of the public against a desire to avoid unnecessary inconvenience and expense.' As *Hulse* [*v. Criger*, 247 S.W.2d 855, 857, 862 (Mo. 1952) (enbanc)] noted, the key factor in making this determination is whether preparing the document requires legal judgment or discretion.") (quoting *In re First Escrow*, *Inc.*, 840 S.W.2d 839, 843 (Mo. 1992)) (internal citation omitted). Once it has been determined that a document is legal in nature, charging for merely filling in blanks on such a document constitutes unauthorized practice of law even if filling in the blanks does not require legal judgment. *See Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 337-38 (Mo. 2007) (en banc) (finding that completing pre-printed legal documents for a fee constituted unauthorized practice of law); *In re Mid-Am. Living Trust Assocs., Inc.*, 927 S.W.2d 855, 865 (Mo. 1996) (en banc) (determining that non-attorneys could only fill in blanks on legal documents if they did so without compensation); *Hulse*, 247 S.W.2d at 857, 862 (determining a person "may not make a separate charge for completing any standardized forms" and finding a party who had "fill[ed] in such form or forms" had violated the law). Missouri law has already determined that documents establishing power of attorney and obtaining title are legal in nature. *In re Mid-Am. Living Trust*, 927 S.W.2d at 856 (holding that legal documents include durable powers of attorneys); *State v. Hayes*, 597 S.W.2d 242, 249

18

(Mo. Ct. App. 1980). Thus, it is immaterial whether TMBC exercised legal judgment when it filled out the forms.

TMBC argues that *Klutho v. The Company Co.*, No. 12SL-01597, 2013 WL 4792878 (Mo. Cir. Ct. Feb. 27, 2013), establishes that filling in blanks on a document does not constitute unauthorized practice of law. (Doc. # 310, p. 31). TMBC is correct that in *Klutho*, the Missouri Circuit Court determined that the defendant had not engaged in unauthorized practice of law when it cut and pasted information into a standard form. 2013 WL 4792878, at p. 1. However, the defendant in *Klutho* "did not charge a separate fee for this administrative assistance" and "there was nothing that [the defendant] charged that was denominated a document preparation fee." *Id.* at pp. 1-2. As the Missouri Supreme Court has previously established, "non-attorneys c[an] properly fill in blanks in standard . . . forms when they performed such a service *without compensation*." *In re Mid-Am. Living Trust*, 927 S.W.2d at 865 (emphasis in original). However, the undisputed evidence in this case shows that TMBC charged a fee, which included, at least in part, a fee for the completion of legal documents. (Wagner Depo. 22:6-23:24; Kraatz Decl. ¶¶ 8, 13; Exhibits 529-34; Eisenhower Depo. 47:2-9). Accordingly, TMBC engaged in unauthorized practice of law in violation of Mo. Rev. Stat. § 484.020(1) as a matter of law.

### 3. Whether Extraterritoriality Concerns Prevent the Application of Mo. Rev. Stat. § 484.020(1)

The class definition includes plaintiffs who made purchases and were charged document fees in states other than Missouri. (Doc. # 265, pp. 4-5). However, the unauthorized practice of law statute is a Missouri state statute. *See* Mo. Rev. Stat. § 484.020(1). TMBC argues that applying Mo. Rev. Stat. § 484.020(1) to transactions that took place outside of the state of Missouri is improper. (Doc. # 333, pp. 107-110). However, this argument has already been

heard and rejected by three separate courts. First, the Supreme Court of Missouri granted a preliminary writ to determine whether this case should proceed as a class action. *State ex rel. McKeage*, 357 S.W.3d at 599. In their brief to the Missouri Supreme Court, Defendants argued that a class should not be certified because Missouri's unauthorized practice of law statute could not apply extraterritorially and doing so would undermine the policies of other states. Brief for Respondent *State ex rel. McKeage*, 357 S.W.3d 597 (No. SC91658), 2011 WL 5104259, 86. The Missouri Supreme Court rejected Defendants' argument stating, "[g]enerally, parties may choose the state whose law will govern the interpretation of their contractual rights and duties. A valid choice of law provision in a contract binds the parties." *State ex rel. McKeage*, 357 S.W.3d at 600-01 (internal citation omitted).

Next, Defendants argued before the Court that Mo. Rev. Stat. § 484.020(1) could not apply extraterritorially. (Doc. # 167, p. 16). The Court did not find the argument persuasive and declined to decertify the class on that basis. (*Id.*). Finally, Defendants appealed the certification decision of this Court to the Eighth Circuit. (Exhibit 540). In their Petition, Defendants argued that Mo. Rev. Stat. § 484.020(1) could not apply to transactions which took place outside the state of Missouri. (*Id.* at 17-19). The Eighth Circuit denied Defendants' Petition. (Exhibits 544, 545). This Court declines to revisit what has already been argued, considered, and rejected by three separate courts. Accordingly, Plaintiffs' Motion for Summary Judgment is GRANTED with the exception of the 2293 individual class members with whom there is a genuine dispute of material fact regarding whether they fall within the class definition.

**D.      Whether Damages are Available to Plaintiffs**

   ***1.      Whether Damages have been Sufficiently Established***

20

TMBC first argues that Plaintiffs are not entitled to recover any damages because they have failed to present precise evidence of their damages. (Doc. # 310, p. 32). Specifically, TMBC asserts that Plaintiffs may recover nothing unless they establish what portion of the charged document fee was paid for services constituting unauthorized practice of law. (*Id.* at 33). TMBC relies on *Bray v. Brooks*, 41 S.W.3d 7 (Mo. Ct. App. 2001) to support its position. In *Bray*, the plaintiffs hired the defendant as their real estate broker for an eight percent commission. 41 S.W.3d at 9. In addition to his duties as a broker, the defendant drafted a number of legal documents for the plaintiffs that the court found violated Missouri's unauthorized practice of law statute. *Id.* at 13-14. In determining damages, the court stated:

> The [plaintiffs] argue that they should not be required to prove a separate charge .
> . . . [The defendant] argues that there was no evidence of a separate charge for his
> drafting of documents in violation of § 484.010.1. Acceptance of the [plaintiffs']
> argument could result in the application of severe penalties against a person based
> on the amounts that were legitimately charged for legitimate goods and services.
> However, acceptance of [the defendant's] argument would allow a person
> engaging in the unauthorized practice of law to avoid civil liability for damages
> under § 484.020.2 merely by not making a defined separate charge. Neither
> position would satisfy or fulfill the proper legislative intent underlying the statute.
> A more reasoned approach would be to impose civil damage liability under §
> 484.020.2 where not only is there a separate charge for the service, but also when
> there is a different charge for the goods or services that are illegal in nature.

*Id.* at 14. The court then determined that because the plaintiffs were charged only one fee for all of the services provided by the defendant and because the plaintiffs presented no evidence as to "what customary charges might be for the legitimate services [the defendant] provided or any other measure by which the trial court could determine the amount 'paid' for the legal services[,] . . . there was no substantial evidence to support the damage calculation." *Id.*

This case differs from the facts of *Bray*. Unlike in *Bray*, TMBC did not charge a single fee for all of its services. Instead, TMBC charged Plaintiffs approximately $27,000 for their boat and a separate $75 as a document fee. (Plaintiffs' Contract, 1). That document fee was charged,

Case 6:12-cv-03157-GAF   Document 343   Filed 05/05/15   Page 21 of 29

at least in part, for services that violate Missouri's unauthorized practice of law statute. (*See* Wagner Depo. 22:6-23:24; Kraatz Decl. ¶¶ 8, 13; Exhibits 529-34; Eisenhower Depo. 47:2-9). Thus, TMBC's charge falls within the realm of damages envisioned in *Bray* because there was a defined, separate charge for the illegal services which was different than the charge for the legitimate goods. *See Bray*, 41 S.W.3d at 14.

It is even more apparent that Plaintiffs have sufficiently established damages when the basis of the *Bray* court's decision is examined. The *Bray* court explicitly stated that the "[Missouri] Supreme Court implicitly recognized this middle ground in fashioning the injunctive relief in *In re First Escrow* . . . to hold that the escrow company may not charge a separate document preparation fee 'or vary their customary charges for closing based upon whether documents are to be prepared in the transaction.'" *Bray*, 41 S.W.3d at 14 (quoting *In re First Escrow*, 840 S.W.2d at 849). TMBC violated the provision of *In re First Escrow* because it charged a separate document fee in addition to the price charged for the legitimate boat. (Plaintiffs' Contract, 1).

The fact that this separate document fee may have included charges for services in addition to the illegal services is immaterial. Once a separate charge for the illegal services is made, a defendant cannot avoid liability by claiming that the charge also encompasses other services. For example, in *Eisel*, the defendant charged a document fee for completing pre-printed forms, including "a deed of trust and a promissory note, as well as various other documents, depending on the loan involved." 230 S.W.3d at 337 n.3. The Missouri Supreme Court stated "[t]here can be no question that the preparation of the deed of trust and the promissory note constitutes the practice of law. The Court does not address any other specific documents." *Id.* (internal citation omitted). The Missouri Supreme Court affirmed the lower

court's award of treble damages based on the entire document fee even though the document included a charge for preparation of documents that were not found to be illegitimate. *Id.* at 340. Thus, it is immaterial whether the separately charged document fee included a charge for other services.

This same rationale applies to Plaintiffs' money had and received claim. When an entity violates Missouri's unauthorized practice of law statute, a plaintiff has "the option of pursuing recovery under both the statute and the common law action of money had and received." *Carpenter*, 250 S.W.3d at 703. However, a plaintiff "may only obtain a single recovery." *Id.* "Therefore, plaintiffs who paid the fee are entitled to one of the two actions for relief. Plaintiffs who meet the requirements of section 484.020.2 can recover treble damages. Those who do not meet the requirements of the statute can recover the fee paid on the theory of money had and received and interest." *Id.* Accordingly, Plaintiffs have sufficiently established damages.

### 2. *Whether Plaintiffs are Entitled to Treble Damages*

Mo. Rev. Stat. § 484.020(2) states that any entity who violates Missouri's unauthorized practice of law rule "shall be subject to be sued for treble the amount which shall have been paid him or it for any service rendered in violation [of the statute]." TMBC argues that treble damages are permissive, not mandatory. (Doc. # 310, p. 44). However, the language of the statute itself indicates that treble damages are mandatory. "'The use of shall in a statute is indicative of a mandate to act. The general rule is that use of shall is mandatory and not permissive.'" *Neal v. Mo. Dir. of Revenue*, 312 S.W.3d 444, 447 (Mo. Ct. App. 2010) (quoting *Welch v. Eastwind Care Ctr.*, 890 S.W.2d 395, 397 (Mo. Ct. App. 1995)). TMBC correctly notes that the statute is not a model of clarity. (Doc. # 310, p. 44). The statute does not say that "the violator shall pay treble damages, or that the injured party shall recover treble damages."

23

(*See id.*).  However, the statute does state that the violator "shall be subject to be sued for treble [damages]."  Mo. Rev. Stat. § 484.020(2).  Additionally, the statute goes on to state that if the injured party "fail[s] to sue for or recover such treble amount, then the state of Missouri shall have the right to and shall sue for such treble amount and recover the same."  *Id.*  Thus, it is clear from the language of the statute that the Missouri legislature envisioned that it would be mandatory for the violator to pay treble damages.

Additionally, the Missouri Supreme Court has interpreted the statute as mandating the payment of treble damages.  In *Carpenter*, the Missouri Supreme Court found that the statute's treble damages were a "statutory imposition of penal damages" which did "not require a finding of a culpable mental state."  250 S.W.3d at 701-02.  TMBC cites to *Hulse* to support its argument that treble damages are not mandatory.  (Doc. # 310, p. 45).  In *Hulse*, the Missouri Supreme Court determined that the defendant had engaged in unauthorized practice of law but found that "since the matter had not previously been decided in this State and [the defendant] had been frank and helpful to the Bar Administration, we think no substantial penalty should be imposed. It is, therefore, ordered and adjudged that [the defendant] pay a fine of one dollar."  247 S.W.2d at 863.  There are a number of issues with TMBC's reliance on *Hulse*.  First, *Carpenter* came over fifty years after *Hulse* and determined that treble damages were legislatively prescribed. *Compare Carpenter,* 250 S.W.3d at 701-02 *with Hulse*, 247 S.W.2d 855.  Additionally, unlike in *Hulse*, this matter has been previously decided in Missouri.  A number of cases in the years since *Hulse* have determined that filling in blanks on legal documents constitutes unauthorized practice of law.  *See Carpenter*, 250 S.W.3d at 702; *Eisel*, 230 S.W.3d at 337-38; *In re Mid-Am. Living Trust*, 927 S.W.2d at 865.  Even *Hulse* established this proposition.  *Hulse*, 247 S.W.2d at 857, 862.  Thus, *Hulse's* rationale for failing to impose a penalty does not apply in this case.

Under the statute, an injured party has two years from the date of paying an unauthorized document fee to file suit and receive treble damages. Mo. Rev. Stat. § 484.020(2). Thus, those Plaintiffs who paid document fees within two years of the date the suit was filed are entitled to treble damages as a matter of law.

### 3. *Whether Plaintiffs are Entitled to Punitive Damages*

In their Complaint, Plaintiffs request that the Court award them punitive damages. (Complaint, p. 12). TMBC moves for summary judgment determining that Plaintiffs are not entitled to punitive damages. (Doc. # 310, p. 47). As explained above, when an entity violates Missouri's unauthorized practice of law statute, the injured party may either bring a suit under the Missouri statute, if the violation occurred within the preceding two years, or may bring an action for money had and received. *Carpenter*, 250 S.W.3d at 703. Plaintiffs bring suit under both the unauthorized practice of law statute and the common law action of money had and received. (Complaint, pp. 8, 10). They assert their statutory cause of action for those class members who paid a document fee within the two years preceding this suit. (Doc. # 194, p. 24). Missouri's unauthorized practice of law statute "does not provide for attorney fees or punitive damages." *W.C. Motor Co. v. Talley*, Case No. 12 C 2307, 2014 WL 3882489, at *4 (N.D. Ill. Aug. 7, 2014) (applying Missouri law). Plaintiffs agree that they are not entitled to punitive damages on their statutory claim. (Doc. # 319, p. 63). Accordingly, Plaintiffs are not entitled to any punitive damages on that claim beyond the treble damages previously discussed.

An action for money had and received is available to individuals "who paid the fee within three to five years of filing suit." *Carpenter*, 250 S.W.3d at 703. Plaintiffs bring an action for money had and received for the class members who paid document fees within three to five years

25

of the day this suit was filed. (Complaint, p. 10). Plaintiffs argue that these class members are entitled to punitive damages. (Doc. # 319, p. 63).

"An action for money had and received is . . . founded upon a contract implied in law." *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. Ct. App. 2010). A "claim for money had and received sounds in contract rather than in tort." *Kubley v. Brooks*, 141 S.W.3d 21, 31 (Mo. 2004) (en banc). "The general rule is that punitive damages may not be recovered in breach of contract actions." *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 902 (Mo. 1990) (en banc). The Missouri Supreme Court recognized that "[i]t has been said repeatedly that (excepting perhaps within certain narrow exceptions not here important) punitive damages are not recoverable in an action on contract, and this has been held specifically in an action for money had and received." *Hilderbrand v. Anderson*, 270 S.W.2d 406, 410 (Mo. Ct. App. 1954). Accordingly, TMBC's Motion for Summary Judgment denying punitive damages is GRANTED. However, these individuals are entitled to "recover the fee paid on the theory of money had and received and interest upon that amount from the date of payment" as a matter of law. *See Carpenter*, 250 S.W.3d at 703.

### 4. Whether Plaintiffs are Entitled to Rescission

In their Complaint, Plaintiffs also move to rescind their individual contract. (Complaint, p. 11). TMBC moves for summary judgment against Plaintiffs' rescission claim, alleging that it is inconsistent with Plaintiffs' class claims. (Doc. # 310, p. 43). A plaintiff "'may not pursue or attempt to intermingle'" remedies which are "'wholly inconsistent.'" *Harper v. Barket*, 557 S.W.2d 455, 457 (Mo. Ct. App. 1977) (quoting *Auffenberg v. Hafley*, 457 S.W.2d 929, 935 (Mo. Ct. App. 1970)). TMBC alleges that rescission is wholly inconsistent with Plaintiffs' statutory unauthorized practice of law claims because rescission extinguishes the contract. (Doc. # 327, p.

26

Case 6:12-cv-03157-GAF   Document 343   Filed 05/05/15   Page 26 of 29

22).  TMBC is correct that "[r]escission of a contract extinguishes it as effectually as if it had never been made."  *See Phillips v. Bradshaw*, 859 S.W.2d 232, 235 (Mo. Ct. App. 1993).  However, success under the unauthorized practice of law statute is not dependent upon the existence of a valid contract.  Instead, all that is required is that an entity charged a fee for engaging in unauthorized practice of law.  *Carpenter*, 250 S.W.3d at 702.  Thus, even if Plaintiffs' boat contract is rescinded and treated as though it was never made, TMBC still charged them a $75 document fee.  (Plaintiffs' Contract, 1).  Accordingly, summary judgment on Plaintiffs' rescission claim is DENIED.

### 5.    *Whether Plaintiffs are Entitled to Injunctive Relief*

In their Complaint, Plaintiffs also seek injunctive relief "including a preliminary and permanent injunction enjoining defendants from continuing the unlawful practices."  (Plaintiffs' Complaint, p. 12).  However, TMBC stopped charging a document fee in 2009.  (Stokes Depo. 20:22-21:10).  Plaintiffs agree that this request is now moot.  (Doc. # 319, p. 56).  Accordingly, TMBC's Motion for Summary Judgment against Plaintiffs' request for an injunction is GRANTED.

## CONCLUSION

Plaintiffs and Defendants both filed Motions for Summary Judgment.  Plaintiffs only made purchases from TMBC and were only charged document fees by TMBC.  For Plaintiffs' claims to proceed against Tracker Marine Retail, Bass Pro, or Travis Boats, Plaintiffs must have shown that there was an agency relationship between TMBC and these other Defendants or established that this Court should pierce the corporate veil.  However, Defendants proved that as a matter of law neither avenue was available because Plaintiffs failed to put forth any evidence upon which a reasonable jury could conclude that all necessary elements were present.

For Plaintiffs to be entitled to summary judgment, they must have established that there was no reasonable dispute of material fact regarding whether each class member's transaction was governed by Missouri law. Defendants put forth significant probative evidence regarding whether 2293 specified class members' transactions were governed by Missouri law. Thus, as to these 2293 class members, reasonable disputes of material fact exist and Plaintiffs' Motion for Summary Judgment is DENIED. As to the other class members, no reasonable dispute of material fact exists. Additionally, Plaintiffs established as a matter of law that TMBC engaged in unauthorized practice of law. Therefore, as to the remaining class members, Plaintiffs' Motion for Summary Judgment is GRANTED.

Plaintiffs have also established that as a matter of law those individuals who meet the requirements of Missouri's unauthorized practice of law statute are entitled to treble damages and those individuals who fall within the common law action of money had and received are entitled to actual damages and interest. However, Defendants have established as a matter of law that punitive damages and injunctive relief are unavailable. Finally, Defendants failed to establish that Plaintiffs' claim for rescission failed as a matter of law.

Accordingly, for these reasons and the reasons set forth above, it is

**ORDERED** that Defendants' Motion for Summary Judgment is GRANTED in favor of Tracker Marine Retail, Bass Pro, and Travis Boats.

**IT IS FURTHER ORDERED** that genuine disputes of material fact exist regarding the 2293 class members identified by Defendants. Accordingly, Plaintiffs' Motion for Summary Judgment is DENIED as it applies to those 2293 specified individuals.

**IT IS ADDITIONALLY ORDERED** that as to the rest of the class, Plaintiffs' Motion for Summary Judgment is GRANTED.

**IT IS ALSO ORDERED** that those class members who paid document fees within two years from the date this action was brought are entitled to treble damages as a matter of law and those that fall within the common law theory of money had and received are entitled to actual damages and interest as a matter of law.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment against punitive damages is GRANTED.

**IT IS ADDITIONALLY ORDERED** that Defendants' Motion for Summary Judgment against rescission is DENIED.

**IT IS LASTLY ORDERED** that Defendants' Motion for Summary Judgment against injunctive relief is GRANTED.

/s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: May 5, 2015

29